UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 11, 2015

LETTER TO COUNSEL

    RE:    *George Cokinos o/b/o Alex Cokinos v. Commissioner, Social Security Administration*;  Civil No. SAG-13-2035

Dear Counsel:

On July 15, 2013, Plaintiff, George Cokinos, petitioned this Court to review the Social Security Administration's final decision to deny his request for waiver of an overpayment. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 34, 36). I find that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. § 405(g); *see Garnett v. Sullivan*, 905 F.2d 778, 780 (4th Cir. 1990). Under that standard, I will deny both parties' motions, reverse the Commissioner's judgment, and remand the case to the Commissioner for further consideration.  This letter explains my rationale.

This case has a long and tortured procedural history.  Plaintiff's son, Alex Cokinos, was found disabled as of April 25, 1993, and began receiving disability benefits, as did his minor child. (Tr. 304).  Plaintiff was named as the representative payee for both recipients. *Id.*  In the following years, Alex Cokinos began working off and on as a pizza delivery person.  *Id.*; (Tr. 154, 378).  On March 8, 1999, the Social Security Administration ("SSA") sent Alex Cokinos a letter in which they sated that he "[had] been doing substantial gainful work since March 1997" and was "no longer entitled to checks beginning June 1997." (Tr. 69).  However, later in the same letter, SSA stated "your benefit checks have been started beginning for the month of December 1997 and beginning February 1998.  They will continue as long as you have a disabling condition and do not do substantial gainful work." (Tr. 70).  On April 10, 1999, SSA sent a letter to Plaintiff which states, "[Alex] Cokinos is entitled to payments for December 1997 because his work was not substantial for that time.  his [sic] is also entitled to payments beginning February 1998 because he is no longer doing substantial work."[1]  (Tr. 65).  The April 10, 1999 letter reflected that Plaintiff should not have received payments for the beneficiaries for seven months in 1997 and early 1998, and stated that there had been an overpayment of $3,068.00 in benefits for those months. (Tr. 66).  That overpayment is not at issue here.

---

[1] The record does not contain any earnings records showing what Alex Cokinos earned on a monthly basis during the relevant time frame.  It appears from this letter, however, that as of April, 1999, SSA had determined that Alex Cokinos's monthly earnings from February, 1998 through March, 1999 did not rise to the level of substantial gainful employment.  That determination stands in stark contrast to SSA's later attempt to pursue overpayment for those months.

Case 8:13-cv-02035-SAG   Document 37   Filed 12/11/15   Page 2 of 5

*George Cokinos o/b/o Alex Cokinos v. Commissioner, Social Security Administration*
Civil No. SAG-13-2035
December 11, 2015
Page 2

In November, 1999, SSA sent letters to Plaintiff indicating that the Disability Insurance Benefit ("DIB") payments for both Alex Cokinos and his minor child would be increased, to account for his 1998 earnings. (Tr. 58-61). On April 25, 2001, SSA sent a letter to Alex Cokinos indicating that his Supplemental Security Income ("SSI") payment amount would be changed, due to his monthly income from his DIB payments. (Tr. 54-56).

On October 15, 2002, Plaintiff received a letter from SSA stating that Alex Cokinos had received overpayment of benefits in the amount of $28,524.80. (Tr. 20-23). The period of the alleged overpayment was from March, 1998 through September, 2002, but the letter provided no analysis of Alex Cokinos's entitlement to benefits during each of those months. *Id.* On that same date, Plaintiff received a second letter alleging an overpayment of $6,895.00 to Alex Cokinos's minor child for the same months. (Tr. 24). Plaintiff and Alex Cokinos filed requests for a waiver of the overpayment. (Tr. 25-34). On November 25, 2002, despite the overpayment letter, SSA sent Plaintiff a letter indicating that Alex Cokinos would receive SSI checks in the amount of $545.00 for November, 2002 and December, 2002. (Tr. 48-51).

Following a personal conference, on September 24, 2003, SSA decided that the overpayment would not be waived because Alex Cokinos "continued to accept benefit payments you were not entitled to and which you either knew or could have been expected to know were incorrect." (Tr. 82-83). An ALJ held a hearing on October 13, 2004, and issued an opinion on January 14, 2005, again finding that a waiver was inappropriate. (Tr. 15-18, 134-56). The Appeals Council denied review of the 2005 opinion. (Tr. 5-7). Following an appeal to this Court, United States Magistrate Judge Thomas DiGirolamo remanded the case back to SSA because the ALJ failed "to analyze, in any manner, precisely what Mr. Cokinos knew, or should have known, based on" SSA's representations in the various letters SSA had sent. (Tr. 175).

On remand, the ALJ held a second hearing on November 2, 2007. (Tr. 240-51). The ALJ then issued a second unfavorable decision. (Tr. 164-66). Plaintiff again appealed to this Court, and this time the Commissioner consented to have the case remanded to the Agency for further consideration. (Tr. 266-67). A new ALJ held a third hearing on August 25, 2010, and subsequently issued a third unfavorable decision on October 26, 2010. (Tr. 302-08, 385-415). This time, on January 26, 2012, the Appeals Council remanded the matter to the ALJ for an additional hearing, to determine whether Alex Cokinos was entitled to waiver of the overpayment. (Tr. 318-21). On January 30, 2013, an ALJ conducted a fourth hearing, and subsequently issued a fully favorable decision finding that Alex Cokinos was entitled to waiver of the overpayment. (Tr. 259-62, 373-83). That decision, however, did not alter the 2010 decision that Plaintiff, as the representative payee, was not entitled to waiver. Thus, Plaintiff has appealed that 2010 decision, which constitutes the final determination of the Commissioner for purposes of this appeal.

This case turns on whether the ALJ provided substantial evidence to support his determination that Plaintiff was not entitled to waiver of the overpayment. An overpayment is defined as "the difference between the amount paid to the beneficiary and the amount of the payment to which the beneficiary was actually entitled." 20 C.F.R. § 404.504. When an

*George Cokinos o/b/o Alex Cokinos v. Commissioner, Social Security Administration*
Civil No. SAG-13-2035
December 11, 2015
Page 3

overpayment occurs, SSA will adjust any benefit payments due to an overpaid claimant, or recover the funds by, for example, requiring the claimant to refund the overpayment. *See* 42 U.S.C. § 404(a). No adjustment or recovery is permitted if: (1) the overpaid individual is without fault and; (2) recovery would defeat the purpose of Title II of the Act, or be "against equity and good conscience." 42 U.S.C. § 404(b); *Garnett*, 905 F.2d at 781. In determining whether an individual is without fault, the Agency will consider all pertinent circumstances, including any physical, mental, educational, or linguistic limitations the individual might have. *See* 42 U.S.C. § 404(b); 20 C.F.R. § 404.507.

Fault is defined in SSA's regulations, which provide that what constitutes fault on the part of the overpaid individual depends upon whether the facts show that the overpayment resulted from:

> (a) an incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) failure to furnish information which he knew or should have known to be material; or (c) with respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The overpaid individual bears the burden of demonstrating that he is without fault, and that repayment would be inequitable, or would defeat the purposes of the Act. *Gatewood v. Astrue*, Civil No. JKS-08-1744, 2011 WL 939027, at *2 (D. Md. March 16, 2011). Even when the Agency has some culpability in the overpayment, an assessment of fault applies only to the overpaid individual. *See* 20 C.F.R. § 404.507. Thus, the fact that SSA is at fault for sending confusing, contradictory, and potentially erroneous correspondence in this case is not dispositive as to whether there is fault on the part of Plaintiff. However, SSA's actions are properly considered in assessing Plaintiff's state of mind.

Ultimately, the ALJ here did not support his conclusion with substantial evidence. Admittedly, the difficulty in this case lies in an attempt to analyze an incomplete record to determine what an allegedly overpaid individual "knew or could have been expected to know was incorrect" thirteen to seventeen years ago. The record contains no monthly earnings records for Alex Cokinos, and none of the annual "work activity reports" that Plaintiff testified he filed regarding Alex Cokinos's work earnings.[2] (Tr. 149-50). In the absence of any of that relevant evidence to rely upon to provide context for Plaintiff's assertions, the ALJ did not conduct any sort of credibility assessment of Plaintiff's testimony at the many hearings in this case. *See Gatewood*, 2011 WL 939027, at *3 ("[T]he credibility determination 'must contain specific reasons for the finding on credibility supported by evidence in the case record'... Here, the

---

[2] While the Fourth Circuit has not directly addressed the issue, the Second, Seventh, and Eighth Circuits have found remand appropriate where the record is incomplete. *See Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) ("Faced with such an incomplete record…we of course cannot say the ALJ's decision is supported by substantial evidence."); *see also Allord v. Astrue*, 631 F.3d 411 (7th Cir. 2011); *Channell v. Colvin*, 756 F.3d 606, (8th Cir. 2014). Even if remand is not warranted on the Agency's failure to keep appropriate records alone, the incomplete record in this case clearly impacts the ALJ's ability to support his conclusions with substantial evidence.

*George Cokinos o/b/o Alex Cokinos v. Commissioner, Social Security Administration*
Civil No. SAG-13-2035
December 11, 2015
Page 4

[Agency] did not make any credibility assessment of [the claimant's] testimony or indeed even acknowledge that he had testified that he did not receive the notice denying his request for review.") (citation omitted). A credibility assessment is needed here, because Plaintiff's testimony that he provided annual work activity reports contravenes the ALJ's repeated assertions that "the representative payee failed to notify the Social Security Administration of the claimant's work." (Tr. 305).

Instead of conducting a factually supported assessment of Plaintiff's credibility, what he knew at what time, and what information he provided to the Agency, the ALJ reverted to general statements without factual support in the record. The ALJ clearly relied on the potentially erroneous fact that Plaintiff did not inform SSA of Alex Cokinos's work until SSA contacted Plaintiff about the overpayment. (Tr. 305, 307). With respect to the conflicting letters, the ALJ's entire analysis stated:

> If a representative payee, knowing, as here, that a claimant is working, but continues to be paid disability benefits, and receives conflicting information as to whether those payments can continue, it is his duty to seek an explanation from SSA as to the status of the claim. While having the mental capacity to pursue an explanation, but having failed to do so, the representative payee failed to perform his duties in a diligent manner.

(Tr. 307). That analysis is (1) lacking in any citation to establish the representative payee's "duty to seek an explanation;" and (2) lacking in any factual analysis of whether Plaintiff knew or could have been expected to know that the payments were unwarranted based on the actual letters he received in this case, and the actual work status of Alex Cokinos during the relevant time frame. The record does not clearly establish that Alex Cokinos was not entitled to benefits during all of the months in question. For example, the record reflects that Alex Cokinos received total earnings of only $6498.16 in 1999. (Tr. 339). Since the monthly threshold for substantial work was $700 in that year, as a matter of simple mathematics, it is impossible that Alex Cokinos met or exceeded that threshold in all 12 months. In 1999, Alex Cokinos was within the extended period of eligibility according to SSA's April 10, 1999 letter, (Tr. 65), and would have been entitled to receive benefits during any months in which his work was not substantial. It is not even possible, sixteen years later and with the benefit of a good understanding of the Agency's requirements, to determine on this record whether Alex Cokinos was entitled to benefits during each month of 1999. Thus, without further analysis of the facts in this case, the ALJ has not provided substantial evidence to support a conclusion that Plaintiff, who was a layperson, "knew or could have been expected to know that payments were unwarranted," particularly given the confusing nature of the letters sent to Plaintiff and the fact that Alex Cokinos's earnings, throughout the relevant period, appear to have been quite close to the line delineating substantial work.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 34) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 36) is DENIED. The

*George Cokinos o/b/o Alex Cokinos v. Commissioner, Social Security Administration*
Civil No. SAG-13-2035
December 11, 2015
Page 5

ALJ's opinion is REVERSED IN PART, and the case is REMANDED for further proceedings. The clerk is directed to CLOSE this case.

     Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                    Sincerely yours,

                                      /s/

                                    Stephanie A. Gallagher
                                    United States Magistrate Judge